**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CORD:USE CORD BLOOD BANK, INC.,

    Plaintiff,

v.                                                                  Case No:  6:11-cv-893-Orl-36KRS

CBR SYSTEMS, INC.,

    Defendant.
_____/

## ORDER

This cause comes before the Court upon the Report and Recommendation filed by Magistrate Judge Karla R. Spaulding on September 26, 2012 (Doc. 51).  In the Report and Recommendation, Magistrate Judge Spaulding recommends that the Court deny Plaintiff CORD:USE Cord Blood Bank, Inc.'s ("Plaintiff" or "CORD:USE") Motion for Preliminary Injunction, filed on July 25, 2012 (Doc. 35).  On October 10, 2012, Plaintiff filed an Objection to Judge Spaulding's Report and Recommendation ("Objection") (Doc. 53).  On October 29, 2012, Defendant CBR Systems, Inc. ("Defendant" or "CBR") filed a Response to Plaintiff's Objection (Doc. 54).  As such, this matter is ripe for review.

    **I.**    **BACKGROUND**

        **A. Facts**

Plaintiff and Defendant are both in the cord blood banking industry, which preserves umbilical cord blood for potential use as a source of stem cells.  *See* Affidavit of Dr. Edward S. Guindi ("Guindi"), founder and CEO of CORD:USE, Doc. 35-Ex. 1 at ¶ 4; *see also* Declaration of Thomas E. Moore ("Moore"), co-founder and CEO of CBR, Doc. 41-Ex. 2, ¶ 3.

On July 8, 2008, Plaintiff filed an intent-to-use federal trademark registration application, Serial No. 77/516,724, with the United States Patent and Trademark Office ("USPTO"), stating its intent to use the mark BANK WITH THE LEADERS in connection with the collection and preservation of human blood, cord blood bank services, and preservation of umbilical cord blood for potential use as a source of stem cells.  Doc. 1, ¶ 10; Trademark/Service Mark Application, Doc. 41-Ex. 9, pp. 2-4.  On October 15, 2008, the USPTO informed Plaintiff that it needed to file a disclaimer for use of the word "BANK" because the term identifies the nature of Plaintiff's services.  Doc. 41-Ex. 9, pp. 5-7.  On February 13, 2009, Plaintiff made the appropriate disclaimer, stating that "no claim is made to the exclusive right to use BANK apart from the mark as shown."  *Id.* at 8.  On August 17, 2010, the USPTO issued Plaintiff a federal registration for the mark BANK WITH THE LEADERS®.  *See* Doc. 35-Ex. 2.

In 2009, Plaintiff began to use this slogan, launching a branding initiative including a media campaign and change of company identification materials.  Plaintiff alleges that it has used BANK WITH THE LEADERS® as a source identifier on all consumer-directed materials since November 2009, including its website, physician office brochures, trade show and medical convention materials, and other advertising.  Doc. 35-Ex. 1, ¶¶ 7-11.  The Magistrate Judge found that the materials submitted demonstrate that BANK WITH THE LEADERS® is always used in close proximity to Plaintiff's house mark, CORD:USE, which appears in significantly larger font.  Doc. 51, p. 5; Doc. 35-Ex. 1, pp. 5-27.

Moore avers that CBR began using the slogan BANK WITH THE BEST in United States commerce as early as August 2009.  Doc. 41-Ex. 2, ¶ 6.  Upon reviewing the materials submitted in conjunction with CBR's Response to Plaintiff's Motion for Preliminary Injunction, the Magistrate Judge found that the BANK WITH THE BEST slogan is used in conjunction with

Defendant's house mark, CBR Cord Blood Registry. Doc. 51, p. 6; *see* Doc. 35-Ex. 1, p. 28. On March 22, 2011, Defendant filed a use-based application with the USPTO, seeking to register BANK WITH THE BEST in connection with the services it provides. Doc. 35-Ex. 3.

### B. Procedural History

On May 27, 2011, Plaintiff filed the present action against Defendant, seeking injunctive relief and damages for alleged unfair competition and infringement of a federal registered trademark, in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*. (Doc. 1). Plaintiff alleges that it owns the U.S. Trademark Registration for the exclusive right to use BANK WITH THE LEADERS® for the collection and preservation of blood, cord blood bank services, and preservation of umbilical cord blood for use as a source of stem cells. *Id.* at ¶ 10. Plaintiff alleges Defendant has infringed on that trademark and has engaged in unfair competition by using the unregistered mark BANK WITH THE BEST in connection with cord blood bank services. *Id.* at ¶¶ 34-44.

About a month after filing the instant action, Plaintiff protested Defendant's pending USPTO application, arguing that Defendant's proposed mark was confusingly similar to its BANK WITH THE LEADERS® mark. Doc. 35-Ex. 4. On September 13, 2011, the USPTO denied Defendant's application to register BANK WITH THE BEST, based on the examiner's conclusion that there was a likelihood of confusion with Plaintiff's BANK WITH THE LEADERS® mark. Doc. 35-Ex. 6. Defendant responded to this refusal, and on January 23, 2012, the trademark examining attorney affirmed the original denial. Doc. 41-Ex. 10, pp. 26-30. Defendant continued to use its BANK WITH THE BEST mark during the pendency of its

registration application to the USPTO.[1]  On January 23, 2012, Defendant appealed the refusal of its application to register the mark BANK WITH THE BEST.  Doc. 41-Ex. 10, pp. 36-53.  In responding to Plaintiff's Objection, Defendant notes that on October 17, 2012, the USPTO withdrew its prior refusal of Defendant's trademark application and concluded that there is no likelihood of confusion between Defendant's BANK WITH THE BEST and Plaintiff's mark BANK WITH THE LEADERS for the parties' respective services.  *See* Doc. 54, p. 4; Doc. 54-Ex. 1.

On July 25, 2012, Plaintiff filed a Motion for Preliminary Injunction, seeking an order enjoining Defendant from using its BANK WITH THE BEST mark.  Doc. 35.  In its Motion, Plaintiff argues that it has a substantial likelihood of success because BANK WITH THE LEADERS® has priority over BANK WITH THE BEST, and the marks are confusingly similar. *Id.* at ¶¶ 8-15.  Additionally, Plaintiff argues that if a preliminary injunction is not granted it will suffer irreparable harm, the balance of hardship weighs in its favor, and that the public interest weighs in favor of granting the injunction.  *Id.* at ¶¶ 16-17.  On August 13, 2012, Defendant filed its Response in Opposition to Plaintiff's Motion for Preliminary Injunction.  Doc. 41.

**II.   STANDARD**

When a party makes a timely and specific objection to a finding of fact in a report and recommendation, the district court should make a *de novo* review of the record with respect to the factual issues.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).  Federal Rule

---

[1] Additionally, Defendant filed an application to register the mark BANK WITH THE BEST with the USPTO on December 22, 2011.  Doc. 35-Ex. 10.  Plaintiff filed a letter of protest, but the USPTO had not made a final decision regarding Plaintiff's application as of the date of the hearing on Plaintiff's Motion for Preliminary Injunction on August 29, 2012.  Docs. 49; 51, p. 6 n.2.

of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations." Once a timely objection to the Report and Recommendation is made, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." U.S.C. § 636(b)(1)(C). The district judge may accept, reject, or modify in whole or in part, the report and recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

### III. ANALYSIS

In the Report and Recommendation, Magistrate Judge Spaulding found that Plaintiff failed to carry its burden of showing any of the four prerequisites for issuance of a preliminary injunction as required by the Federal Rules of Civil Procedure and the Eleventh Circuit. Doc. 51; Fed. R. Civ. P. 65(a); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).[2] Specifically, Judge Spaulding found that Plaintiff's mark is not strong, Plaintiff has not shown a likelihood of confusion, and there is no evidence of actual confusion despite a significant period of simultaneous use by the parties. *Id.*

In its Objection, Plaintiff argues that the Magistrate Judge made eight factual or legal errors in her Report and Recommendation. Doc. 53, p. 1. The Court addresses each in turn.

#### A. The Magistrate Judge analyzed slogans appropriately

---

[2] "For a district court to grant a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson*, 299 F.3d at 1246-47.

5

First, Plaintiff argues that the Report and Recommendation does not properly treat slogans as trademarks capable of functioning as a source identifier or signifying that the goods or services provided under a mark are of equal quality. *Id.* at 3. Specifically, Plaintiff contends that the fact that a slogan is used in conjunction with a previously existing trademark does not mean that the slogan does not also function as a mark. Hence, Plaintiff argues that the Magistrate Judge's finding that there is not a likelihood of confusion because the slogans at issue are near the parties' house marks is invalid. *Id.* (citing Doc. 51, pp. 5-6, 13-14).

Contrary to Plaintiff's characterization, the Magistrate Judge did not find that because the slogans at issue appear in close proximity to the house brands, they are invalid or unworthy of protection. The Eleventh Circuit holds that where a mark appears alongside a house brand, the physical context in which a mark appears also enters the "likelihood of confusion analysis". *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652, n. 10 (11th Cir. 2007).[3] Specifically, when a mark appears in close proximity to the identifying house brand "such that a consumer would be unlikely to see one without the other," this reduces the likelihood that consumers would be confused as to the source. *Id.* (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 790 (6th Cir. 2004)). Relying upon this precedent, the Magistrate Judge found that the evidence showing that the placement of the parties' respective marks in close proximity to their house marks undercuts the possibility of confusion. Doc. 51, pp. 13-14 (citing *Custom Mfg.*, 608 F.3d at 652, n.10; *AutoZone*, 373 F.3d at 790.). Contrary to Plaintiff's claim, the Magistrate

---

[3] In its Objection, the Plaintiff does not address *Custom Mfg.* or any other binding Eleventh Circuit precedent. Also, contrary to Plaintiff's claim that the Magistrate Judge never explicitly mentions that slogans can function like single word trademarks, Doc. 53, p. 3., the Magistrate's entire analysis on the likelihood of confusion assumes that slogans are treated just like one word trademarks under the Lanham Act. *See* Doc. 51, pp. 9-14; *Custom Mfg.*, 608 F.3d at 652, n. 10; *AutoZone*, 373 F.3d at 790. The Magistrate Judge never claims that a group of words cannot function as a mark to identify and distinguish goods and services.

Judge was confirming that the display of the parties' slogans in conjunction with their other marks pertains to the similarity of the marks' appearances and is to be considered when evaluating whether a likelihood of confusion exists. *Id.*; Doc. 54, p. 5. Thus, the Report and Recommendation properly treats the trademark protections afforded to slogans.

### B. The Magistrate Judge correctly found that the type of mark is one factor in analyzing a mark's strength

Second, Plaintiff argues that the Magistrate Judge erred in assuming Plaintiff abandoned its position that BANK WITH THE LEADERS® is an arbitrary mark.[4] Doc. 53, p. 5. Plaintiff maintains that its mark is arbitrary, or at the very least, suggestive. *Id.* In the Eleventh Circuit, the type of mark is one of the seven factors that the court considers when assessing the likelihood of confusion. *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The stronger the mark, the greater the scope of protection afforded it. *Id.*

In its Motion, Plaintiff argued that BANK WITH THE LEADERS® was arbitrary because it does not convey any connection with Plaintiff's actual operations. Doc. 35, p. 11. The Magistrate Judge explained that at oral argument, Plaintiff abandoned this position, and argued that BANK WITH THE LEADERS® was at least suggestive. Doc. 51, p. 10 n.4. In its Objection, Plaintiff does not dispute that it conceded at oral argument that its mark was at least

---

[4] There are four types of marks, based on the relationship between the name and the service or good it describes: generic, descriptive, suggestive, and arbitrary. "Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). *Frehling*, 192 F.3d at 1335. Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). *Id.* "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." *Dieter v. B&H Indus. of Southwest Fla., Inc.,* 880 F.2d 332, 327 (11th Cir. 1989). For instance, "penguin" would be suggestive of refrigerators. *Freedom Savings,* 757 F.2d at 1182–83 n. 5. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services). *See id.* Arbitrary marks are the strongest of the four categories. *Frehling*, 192 F.3d at 1335.

suggestive. Doc. 53, p. 6. The Court agrees that this represents a change in Plaintiff's position. *See* Doc. 35, p. 11 ("[I]n the present case, the mark BANK WITH THE LEADERS® is arbitrary, as the mark standing alone does not suggest or convey any connection with collection and preservation of human blood; cord blood bank services and the preservation of umbilical cord blood for potential use as a source of stem cells.").

Upon review of the evidence, the Magistrate Judge concluded that BANK WITH THE LEADERS® was, at most, a suggestive mark, and more likely, descriptive of Plaintiff's services.[5] *Id.* at 11. Suggestive marks suggest characteristics of goods and services that require an effort of the consumer's imagination to be understood as descriptive. For example, "penguin" would be suggestive of refrigerators. *Frehling*, 192 F.3d at 1335. Arbitrary marks are words or phrases that bear no relationship to the product: the mark "Sun Bank" is arbitrary as applied to banking services. *Id.* The Court agrees that standing alone, BANK WITH THE LEADERS®, suggests a connection with Plaintiff's services, namely the provision of cord blood bank services. Second, as the Magistrate Judge notes, the USPTO required Plaintiff to disclaim use of the term "BANK" because it was descriptive of the nature of its services. *See* Doc. 41-Ex. 9, pp. 6-8. Further, the Court agrees with the Magistrate Judge that the use of "LEADERS" is not arbitrary, especially considering materials Plaintiff submitted demonstrating that Plaintiff describes itself as being directed by the "world's leading cord blood experts." Doc. 35-Ex. 1, pp. 6, 9; Doc. 51,

---

[5] The Plaintiff's argument that the submission of the registered trademark itself is evidence demonstrating the strength of the trademark is unpersuasive. Doc. 53, p. 6. Indeed, the Certificate of Registration demonstrates that USPTO determined that the slogan was protectable. *See* Trademark Reg. No. 3,835,675, Doc. 35-Ex. 2. Moreover, the case Plaintiff cites states that registration of a mark creates a presumption that the mark is more than merely descriptive, which does not contradict the Magistrate Judge's finding. *Lane Capital Mgmt., Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *see* Doc. 51, p. 11.

p. 11. The mark describes a characteristic of Plaintiff's services, and while it may require some effort because it describes cord blood bank services, it is at most suggestive, and not arbitrary.[6]

### C. The Magistrate Judge correctly balanced the factors for evaluating likelihood of confusion

Plaintiff argues that the Magistrate Judge failed to properly balance the relevant factors in assessing the likeliness of confusion between marks. Doc. 53, p. 9. Specifically, Plaintiff claims that the Magistrate Judge improperly grouped together the factors evaluating the similarity of products, retail outlets and customers, and of advertising media. *Id.*

The Eleventh Circuit considers seven factors in determining the likelihood of consumer confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the mark represents; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Frehling*, 192 F.3d at 1335; *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). Also, the Eleventh Circuit has repeatedly held that the type of mark and evidence of actual confusion are the most significant considerations. *Custom Mfg.*, 508 F.3d at 649; *Hi-Tech Pharm., Inc. v. Herbal Health Prod., Inc.*, 132 Fed. Appx. 348, 350 (11th Cir. 2005). As discussed, the Magistrate Judge correctly concluded that Plaintiff's mark was at most suggestive, and comparatively weak. Doc. 51, p. 12. Also, the Magistrate Judge noted that evidence of actual confusion "would be persuasive proof" that future confusion is likely. *Sun Banks of Fla., Inc. v.*

---

[6] Plaintiff's argument that the Magistrate Judge ignored evidence regarding the findings of the Examining Attorney of the USPTO is irrelevant. Doc. 53, pp. 6-8. The Magistrate Judge does not dispute that the slogan BANK WITH THE LEADERS® received a registered trademark, which creates the presumption that the mark is more than merely descriptive. *See* Trademark Reg. No. 3,835,675, Doc. 35-Ex. 2; *Lane Capital*, 192 F.3d at 345. Thus, the Magistrate Judge correctly failed to mention the times during which the Examining Attorney could have, but did not, reject Plaintiff's application because their slogan was merely descriptive. Moreover, the Magistrate Judge concluded that Plaintiff's slogan is not arbitrary, and is barely suggestive. Doc. 51, p. 11.

*Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir. 1981).[7] Plaintiff conceded that there was no evidence of actual confusion despite concurrent use of the marks in commerce since 2009. Doc. 51, p. 17.[8] Thus, with respect to the two "most weighty of considerations" in determining the likelihood of confusion, the Magistrate Judge correctly found that neither evidences a likelihood of future confusion. *Custom Mfg.*, 508 F.3d at 649. Moreover, as Defendant notes, it is clear from the Report and Recommendation that the Magistrate Judge evaluated each of the seven "likelihood of confusion" factors. Doc. 54, p. 7.

Further, the Court finds Plaintiff's objection that the Magistrate Judge incorrectly grouped three factors to be unpersuasive. Doc. 53, p. 9. Indeed, the parties agree that they provide highly similar services. Doc. 51, p. 14. The Magistrate Judge explained that while normally parties providing similar services would weigh in favor of finding a likelihood of confusion, the Eleventh Circuit holds that such confusion is dispelled in highly technical or expensive industries where customers are making discerning purchases. *Id.*; *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (noting that "the nature of the business at issue here requires that the purchasers of the services must be sophisticated consumers, since the services are technical"). Accordingly, Plaintiff's argument that where parties target the same consumers, there is a greater likelihood of confusion, disregards the applicable Eleventh Circuit precedent. Doc. 53, p. 9 (citing *BellSouth Adver. & Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 782-83 (M.D. Fla. 1991)).

---

[7] In *Bonner v. City of Prichard, Ala.* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8] In its Objection, Plaintiff does not dispute that it has not produced any evidence of actual confusion between the parties' marks since November 2009. *See* Doc. 53.

For these reasons, the Court finds that the Magistrate Judge appropriately balanced the seven factors when assessing the likelihood of confusion.

### D. The Magistrate Judge appropriately analyzed the similarity of the marks and Defendant's intent

Plaintiff's fourth and fifth objections are disagreements with the Magistrate Judge's findings with respect to two of the factors in assessing the likelihood of confusion between the parties' marks. Doc. 53, pp. 10-13; *Frehling*, 192 F.3d at 1335. First, Plaintiff's argument that the Magistrate Judge incorrectly concluded that there is minimal similarity between BANK WITH THE LEADERS® and BANK WITH THE BEST is unsupported. Doc. 53, pp. 10-11. The Court agrees with the Magistrate Judge that while the first three words of the slogans are identical, in the context of cord blood banking services, "bank" is a descriptive term that any party could use, and "with the" is not distinctive. Doc. 51, p. 13 (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975-76 (11th Cir. 1983). Further, while the sound and appearance of "LEADERS" and "BEST" are different, the meaning is relatively similar in the context of the slogan.[9] *Id.* These findings, in conjunction with the fact that the proximity between the marks and the parties' names minimizes any confusion, *see supra* III.A, appropriately led the Magistrate Judge to conclude that Plaintiff failed to establish that confusion was likely to occur merely because of the similarities between the slogans. Doc. 51, p. 14.

Second, Plaintiff argues that the Magistrate Judge improperly dismissed evidence of Defendant's intent. Doc. 53, pp. 11-12. Plaintiff's purported evidence of Defendant's intent to infringe is that: (1) Defendant filed a trademark application for BANK ON THE BEST, a

---

[9] Contrary to Plaintiff's claim, the Magistrate Judge's finding with respect to the similarity of the slogans is not contradictory. Doc. 53, p. 11. The Magistrate Judge concluded that while the meanings of "BEST" and "LEADER" convey a similar expression in the context of advertising these services, evaluated as a whole the parties' marks evidence minimal similarity.

11

different mark, after this action was filed; and (2) Defendant continued to use BANK WITH THE BEST during the pendency of its appeal of the USPTO rejection. Doc. 51, p. 16. The Court is in agreement with the Magistrate Judge that Plaintiff did not provide sufficient evidence demonstrating Defendant's intent to infringe. Indeed, the Magistrate Judge noted, as Plaintiff argues, that likelihood of confusion can be found as a matter of law if Defendant intended to derive a benefit from Plaintiff's trademark. Doc. 51, p. 15; *see John H. Harland*, 711 F.2d at 977; *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1999). Importantly, Defendant affirmed that it began using BANK WITH THE BEST in August 2009, months before Plaintiff began using BANK WITH THE LEADERS®. Doc. 41-Ex. 2, ¶¶ 7-8. Moreover, the Court agrees that Defendant's continued used of BANK WITH THE BEST during the pendency of its USPTO appeal is not necessarily indicative of intent to infringe upon the Plaintiff's mark.[10]

The Court agrees that Plaintiff did not provide sufficient evidence to find that Defendant adopted its mark with the intention to infringe upon Plaintiff's mark.

### E. Plaintiff did not establish a substantial threat of irreparable harm

Next, Plaintiff argues that the Magistrate Judge held it to an inappropriately high standard of demonstrating that it would suffer irreparable harm. Doc. 53, p. 13. Plaintiff argues that the harm it will suffer is the inability to control its reputation for quality of services. *Id.* Also, Plaintiff maintains that contrary to the Magistrate Judge's finding, it provided an explanation for

---

[10] Plaintiff has not presented any support for the argument that using a mark while on appeal is pending before the USPTO constituted evidence that the party adopted that mark with an intent to misappropriate goodwill of a competitor. Doc. 51, p. 16. Moreover, its reliance on the "safe distance" rule is misguided. Doc. 53, p. 13 (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1517 (1990)). In *Howard Johnson*, the Eleventh Circuit explained that when a party has been found guilty by a district court of trademark infringement and is appealing, they should be required to keep a safe distance away from the dividing line between violation of, and compliance with, the injunction. *Id.* Here, in contrast, there was neither an injunction nor any finding of trademark infringement against Defendant when it continued to use its mark pending appeal of the USPTO's denial of its application.

the two-month delay between the breakdown of mediation efforts and filing its Motion for Preliminary Injunction—it waited to determine if Defendant would abandon its trademark application or appeal the USPTO decision. *Id.* at 14.

The Magistrate Judge properly noted that in the Eleventh Circuit, a sufficiently strong showing of likelihood of confusion may, by itself, constitute a substantial threat of irreparable harm. Doc. 51, p. 18 (citing *E. Remy Martin & Co.*, *S.A. v. Shaw-Ross Int'l Imp., Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)). However, the Magistrate Judge concluded that because Plaintiff did not demonstrate a likelihood of confusion, it did not make the requisite showing of a substantial threat of irreparable harm. *Id.* The Court agrees with the Magistrate Judge and supportive law that Plaintiff's delay in filing its Motion for Preliminary Injunction negates an inference of irreparable harm.[11] *Id.* (citing *Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2002) (noting "a plaintiff's delay in seeking an injunction in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial")). Plaintiff exhibited delay in filing its complaint, serving Defendant, and waited over two months after mediation failed to file the instant Motion. Doc. 51, pp. 18-19.[12] Thus, the Court agrees with the Magistrate Judge that Plaintiff has not provided any evidence that it will suffer irreparable harm without a preliminary injunction.

---

[11] Moreover, contrary to Plaintiff's claim, the Magistrate Judge's finding that Plaintiff offered no evidence that it will suffer irreparable harm and that the inference of harm was negated by Plaintiff's own delay, shows that the Magistrate Judge was not requiring any showing that harm had already occurred. Doc. 54, p. 9.

[12] Plaintiff's argument that it waited two months after the breakdown of mediation to file the Motion for Preliminary Injunction because it was waiting to see if Defendant appealed the USPTO trademark application is insufficient to demonstrate that it will suffer irreparable harm should the Court not issue a preliminary injunction. Doc. 53, p. 14; Doc. 35, p. 7.

### F. The Magistrate Judge correctly evaluated the balance of equities of issuing an injunction

Next, Plaintiff argues, without any relevant or controlling case law, that the Magistrate Judge miscalculated the balance of hardships and the public interest in issuing the preliminary injunction. Doc. 53, pp. 14-16. Specifically, Plaintiff argues that the Magistrate Judge overemphasized the burden on Defendant should an injunction be issued without considering Plaintiff's long term use of its mark BANK WITH THE LEADERS®. *Id.* In support of this claim, Plaintiff cites a case holding that the interests of a willful infringer cannot be weighed equally when assessing the equities of an injunction. *Id.* (citing *Helene Curtis Industries v. Church-Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977)). Finally, Plaintiff maintains that the Magistrate Judge failed to consider the public interest in avoiding confusion and enforcing the Lanham Act. *Id.* at 16.

In evaluating the balance of harm, the Magistrate Judge noted that while Plaintiff argues that it will lose its goodwill and reputation without an injunction, Defendant's representative Moore avers that Defendant would be forced to destroy a significant amount of advertising and company materials. Doc. 51, p. 19. While the Plaintiff claims Defendant's continued use of BANK WITH THE BEST will damage its reputation or sales, the issuance of an injunction would force Defendant to actually remove signage, advertising materials, and other company property already in existence. Second, the Court agrees that because Plaintiff has failed to prove a likelihood of confusion, the projected harm to Plaintiff is tenuous at best. Similarly, with respect to the public interest, because Plaintiff has not established a likelihood of consumer confusion between the two marks, it has not shown that the public interest weighs in favor of granting a preliminary injunction. *Id.* at 20. While the Court agrees that there is public interest in enforcing the Lanham Act and preventing consumer confusion, Plaintiff's failure to prove a

14

likelihood of prevailing on the merits precludes a finding that the public interest favors issuing an injunction. Doc. 53, p. 16.

Upon review of each of the Plaintiff's objections, the Court finds that the Magistrate Judge correctly concluded that Plaintiff did not meet its burden to satisfy the four prerequisites for issuing an injunction. *See Forsyth Cnty. v. U.S. Army Corps of Eng'rs,* 633 F.3d 1032, 1039 (11th Cir. 2011). Thus, after careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is hereby **ORDERED** as follows:

1) The Report and Recommendation of the Magistrate Judge (Doc. 51) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

2) Plaintiff CORD:USE Cord Blood Bank, Inc.'s Motion for Preliminary Injunction (Doc. 35) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on November 5, 2012.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties
U.S. Magistrate Judge Karla R. Spaulding